IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LONNY L. NEIMAN, JR., | : | |
| Plaintiff | : | CIVIL NO. 1:CV-08-1535 |
| v. | : | |
| AMERICAN INTERNATIONAL GROUP, INC. and its subsidiary AMERICAN GENERAL LIFE AND ACCIDENT INSURANCE COMPANY, | : | JUDGE SYLVIA RAMBO |
| Defendants | : | |

## **M E M O R A N D U M**

  This case concerns a dispute over a term life insurance policy purchased by Larry Null ("Null"), now deceased, from Defendant American General Life and Accident Insurance Company ("American General"). Plaintiff, Null's step-son and beneficiary under the policy, also named Defendant American International Group, Inc ("AIG") as a defendant based on his belief that it is liable to Plaintiff as the parent corporation of American General.

  Upon Mr. Null's death on February 22, 2006, American General refused to pay the insurance proceeds. Defendants contend that Null knowingly or in bad faith concealed information concerning his medical history, and that this information was material to its decision to insure Null. Defendants contend that had they known of Null's true medical history they would have rated him higher, thereby increasing his premiums, or declined coverage altogether. Plaintiff brought suit for breach of contract and insurance bad faith. (Doc. 1.) Defendants asserted a counterclaim seeking a declaratory judgment that the policy was void *ab initio* due

to Null's alleged material misrepresentations. (Doc. 6.) The case is scheduled for jury selection on January 4, 2010.

Before the court are the following motions in limine: (1) Plaintiff's motion in limine, (Doc. 35), which is actually five separate requests to exclude certain evidence that he believes is either irrelevant or, if relevant, is unduly prejudicial; (2) Defendants' motion in limine to strike Plaintiff's jury demand, (Doc. 33); (3) Defendants' motion in limine to strike Plaintiff's claim for bad faith, (Doc. 34); and (4) Defendants' motion in limine to dismiss AIG and bar any reference to AIG at the time of trial, (Doc. 32). These motions have been fully briefed and are ripe for disposition.

**I.        Plaintiff's Motion in Limine**

In his motion in limine, Plaintiff argues that Defendants should be precluded from introducing evidence concerning the following: (1) any of Null's medical records subsequent to the date of the Paramedical Supplement— July 20, 2005—or any medical testimony thereon; (2) any evidence that Null lost weight in contradiction to his statements made in the application and Paramedical Supplement; (3) any evidence contained in Null's medical records with respect to the manner of Null's father's death; (4) any reference to the customer satisfaction survey sent after the policy was issued; (5) any reference to the nurse's note stating "Bloody sputum noted yesterday" contained in the April 28, 2005 medical records from Partners in Family Health. The court will address each of these in turn.

### A. Medical Records Subsequent to July 20, 2005

Plaintiff seeks to preclude Defendants from introducing any of Null's medical records subsequent to July 20, 2005 because these records are irrelevant to Plaintiff's claims and Defendant's counterclaims and defenses. Plaintiff further argues that if the court determines that these records are relevant, they should not be admitted because they are substantially more prejudicial than probative. Thus, the first step is to determine whether Null's medical records subsequent to July 20, 2005 are relevant to any of the claims before the court.

Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

It is clear that Null's medical records—either pre-application or post-application—are irrelevant to Plaintiff's breach of contract and bad faith claims asserted in his complaint. The elements of both of these claims do not require any evidence concerning Null's health or the representations that Null made to American General. However, Null's medical records are relevant to Defendants' counterclaim and affirmative defenses. Defendants have asserted that the policy is void ab initio because of misrepresentations made by Null in the application and the Paramedical Supplement. To void an insurance policy under Pennsylvania law, the insurer has the burden to prove that: (1) the insured made a false representation; (2) the insured knew the representation was false when it was made or the insured made the representation in bad faith; and (3) the representation was material to the risk being

3

insured. *Justofin v. Metro. Life Ins. Co.,* 372 F.3d 517, 521 (3d Cir. 2004) (citations omitted).

Plaintiff argues that Null's medical records subsequent to the statements made on the Paramedical Supplement are irrelevant to Defendants' claims because they cannot possible relate to Null's state of mind at the time that he made the statements. While Plaintiff's argument has some intuitive appeal, the standards for relevance are not as strict as Plaintiff would like them to be. Without belaboring the point, the court agrees with Defendants' analysis that "Mr. Null's consultation with various specialists after the Paramedical Supplement is probative of the gravity of [his] failing health and his appreciation of the same as of the time of . . . the Paramedical Supplement because of the temporal proximity of the consultations to [Null's] representations." (Doc. 42 at 6.) That is to say, these consultations may have a tendency to make it more probable that Null appreciated the seriousness of his illnesses at the time of his Paramedical Supplement. Thus, the evidence is relevant.

Even relevant evidence, however, is subject to exclusion by the court if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues of misleading the jury. . . ." Fed. R. Evid. 403. Here, Plaintiff argues that evidence of Null's subsequent medical records should be excluded from the jury because it would cause the jury to render a decision based on an emotional response rather than the neutral application of principles of law to the facts. The court agrees. Although the evidence of Null's subsequent diagnosis and treatment for lung cancer is relevant, the temporal proximity to his application substantially prejudices Plaintiff's chance at a fair determination by the jury

concerning Null's state of mind <u>at the time of his application and the Paramedical Supplement.</u> Ultimately, one of the material issues in this case is whether Null knowingly or in bad faith made false statements in these two documents. Certainly there is ample evidence from Null's pre-Paramedical Supplement medical history which Defendants can draw upon to demonstrate their case. While evidence of Null's post-Paramedical Supplement medical history is probative of his state of mind, it is not as probative as his pre-Paramedical Supplement medical history, and has the very real potential to cause a jury to conclude that he "had to know" that he had cancer when he made the statements in his application. While it may very well be the conclusion of the jury that Null "had to know" that he had cancer, the court is obligated to both parties to ensure that this conclusion, if it is in fact made, is based on the neutral application of the facts to the law not on an emotional response by the jury.

The court concludes that the probative value of the evidence of Null's medical history subsequent to his answers in the Paramedical Statement is substantially outweighed by the danger of unfair prejudice and confusion of the issues. The issue in this case is not when Null was diagnosed with cancer, or that he died within a relatively short period of time from his application for life insurance; instead, the issue is Null's state of mind at the time he completed the application and Paramedical Supplement. Defendants introduction of post-Paramedical Supplement medical records into evidence could very likely lead a jury to emotionally respond that Null "died too soon" after obtaining insurance, and therefore, he had to know that he was sick, instead of basing its decision on what Null knew or did not know at the time he completed the application and Paramedical Supplement. Accordingly,

the court will preclude, based on Federal Rule of Evidence 403, Defendants from introducing any evidence about Null's medical history occurring subsequent to July 20, 2005.

### B. Weight loss and Father's Death

Plaintiff's motion also seeks to preclude any mention that Null experienced weight loss between early 2005 and the date of his application and Paramedical Supplement because it is without factual support and is prejudicial. Plaintiff makes the same arguments with regard to the cause of death of Null's father. In their response to Plaintiff's motion, Defendants indicate that they "presently have no intention of relying upon Mr. Null's representations regarding weight loss or the cause of his father's death." In light of this representation, the court will preclude this evidence from being introduced. However, should facts develop that make this evidence relevant, Defendants may ask the court to reconsider its ruling.

### C. Customer Satisfaction Survey

Plaintiff also seeks to preclude any mention of or the introduction into evidence of an unsigned customer satisfaction survey that Defendants purport was completed by Null and returned to them. Defendants argue that this survey is relevant because it tends to show that Null received the policy, reviewed it, and affirmed that the information contained in the policy was correct. Specifically, Defendants see this as another affirmation by whomever completed it of the answers contained in the application and Paramedical Supplement. Defendants contend that since the policy makes it clear that the policy and the attached application were the entire contract, that the answer to Question 4 in the survey, is further evidence of

Null's intent to deceive. The court will not permit the customer satisfaction survey to be mentioned or introduced into evidence because it is irrelevant to any of Plaintiff's claims or Defendants' claims or defenses. The court has already determined in its summary judgment opinion that Null's failure to apprise Defendants of his cancer diagnosis does not, as a matter of law, constitute bad faith because he learned this information after the policy already went into effect. (*See* Doc. 30, Part III.B.2) Furthermore, the survey is unsigned, undated, and does not contain an account number. More importantly, the question upon which Defendants rely asks simply "Is the information in your policy correct?" (Doc. 34-2 at 2 of 2, question 4.) This question cannot legitimately be read to mean that the person filling out the questionnaire, after the policy has been issued and delivered, had a duty to somehow understand that this question asked them to confirm that all of their answers to the Application and Paramedical Supplement were, as of that date, still correct. The risk of confusion of the issues and misleading the jury are too great and the probative value of this evidence too little to allow it to be admitted. Accordingly, Defendants will be precluded from introducing any evidence about the customer satisfaction survey.

### D. References in April 2005 medical records of "bloody sputum"

Finally, Plaintiff seeks to preclude Defendants from referencing or otherwise using the nurse's notation appearing in Null's April 28, 2005 medical record that he had noticed "bloody sputum" the day before his doctor's visit. Plaintiff agues that since this note is in the nurse's section of his medical records, rather than the treatment or diagnosis section, that it is irrelevant to the case because the question on the application specifically asked whether he had ever been

7

diagnosed or treated for blood spitting. The court will permit Defendants to use these medical notations. The notation is clearly relevant and it is not unduly prejudicial. Plaintiff can certainly argue that this notation, even if known by Null at the time he made his representations, does not mean that his answers on the application or the Paramedical Supplement were knowingly false or made in bad faith. A jury could conclude that Null simply went to the doctor's for what he believed to be a chest cold and sinus problems and that he did not believe that he was treated for blood spitting. On the other hand, the jury could conclude that this notation confirms that Null had a greater awareness of the severity of his health problems than he let on at the time of his representations. While the information is not favorable to Plaintiff's case, it is relevant and not unduly prejudicial. Accordingly, the court will permit Defendants to introduce these records.

### E. Summary of rulings on Plaintiff's motion in limine

Based on the foregoing, the court will grant in part and deny in part Plaintiff's motion in limine. The court will grant Plaintiff's motion as to the following issues: (1) Defendants are precluded from introducing any of Null's medical records subsequent to July 20, 2005; (2) Defendants are precluded from introducing evidence of Null's purported weight loss or the cause of death of his father; and (3) Defendants are precluded from introducing any evidence concerning the customer satisfaction survey. The court will deny Plaintiff's request to preclude Defendants from introducing evidence of the nurse's notation in Null's April 28, 2005 medical records that he noted "bloody sputum" the day before the visit. Defendants may introduce these records and evidence on this topic.

## II. Defendants' Motions in Limine

Defendants filed three motions in limine: (1) to strike Plaintiff's jury demand; (2) to dismiss Plaintiff's claim for bad faith; and, (3) to dismiss Defendant AIG. The court will address each of them in turn.

### A. Defendants' motion to strike Plaintiff's jury demand

Defendants move to strike Plaintiff's jury demand by arguing that he has no right at common law to demand a jury in a case that is essentially an equitable one. The thrust of Defendants' argument is that the real nature of the dispute between the parties is whether American General rightfully rescinding the policy. The court disagrees. Plaintiff initiated this case by filing a complaint for breach of contract and insurance bad faith. It is true that Defendants filed a counterclaim arguing that they are entitled to rescission of the contract based on their contention that Null knowingly or in bad faith made material misrepresentations in the life insurance application and Paramedical Supplement, but this alone does not transform the case from one at law triable by a jury to one at equity triable by a judge. Defendants unconvincingly argued in their briefs that the Third Circuit's decision in *Ettelson v. Metro. Life Ins. Co.,* 137 F.2d 62 (3d Cir 1943) is no longer controlling. The court disagrees.

In *Ettelson*, the plaintiffs filed suit in state court seeking payment under four life insurance policies issued by the defendant. The case was then removed to federal court, and the defendant filed an answer and counterclaim seeking cancellation and rescission of the policies based upon alleged fraud in procuring them. The plaintiffs filed a jury demand and the trial court stayed the coverage action until the rescission counterclaim was decided. The plaintiffs then appealed

the decision of the district court, and the United States Court of Appeals for the Third Circuit reversed, holding that the rescission counterclaim was essentially a defense to plaintiffs' action at law and therefore should have been decided by a jury.

Although Defendants claim that their rescission counterclaim is an equitable one, the Third Circuit in *Ettelson*, relying on precedent from the Supreme Court, specifically stated that absent special circumstances, "fraud in the procurement of insurance is provable as a defense in an action at law upon the policy, resort to equity being unnecessary to render that defense available." *Id.* at 65. (other citations omitted). Although *Ettelson* is a 1943 decision, it is still good law and it will be followed by this court. Defendants' motion in limine to strike Plaintiffs' jury demand will be denied.

### B.    Motion in limine to strike Plaintiff's bad faith claim

Defendants argue that Plaintiff's claim for bad faith is deficient as a matter of law because the court has already found that Defendants had, at a minimum, a reasonable basis to deny Plaintiff's claim. The court agrees.

In order to recover on a bad faith claim, Plaintiff must demonstrate by clear and convincing evidence (1) that Defendants did not have a reasonable basis for denying benefits under the policy, and (2) Defendants knew or recklessly disregarded their lack of a reasonable basis for denying the claim. *See N.W. Mut. Life. Ins. Co. v. Babayan,* 430 F.3d 121, 137 (3d Cir. 2005); *accord Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 688 (Pa. Super. 1994). Mere negligence does not constitute bad faith. *See Jung v. Nationwide Mut. Fire Ins. Co.*, 949 F. Supp. 353, 356 (E.D. Pa. 1997). Rather, bad faith "requires proof of a dishonest purpose, a state of mind affirmatively operating with . . . ill will, and, in

insurance contexts, the frivolous refusal to pay policy proceeds." *Reading Tube Corp. v. Employers Ins. of Wausau*, 944 F. Supp. 398, 403 (E.D. Pa. 1996) (citations and internal quotation marks omitted).

Here, Plaintiff cannot demonstrate the absence of a reasonable basis for denying benefits. In the court's November 9, 2009 Memorandum and Order denying Defendants' motion for summary judgment, the court found as a matter of law the application and the Paramedical Supplement contained false representations that were material to the risk undertaken by American General. (*See* Doc. 30 at 13, 20.) The court denied Defendants' motion for summary judgment solely because there was a genuine issue of material fact concerning whether Null made the statements knowing them to be false or in bad faith. The court put it this way in its opinion:

> Based on th[e] evidence, a jury could infer that Mr Null was not aware of the falsity of his statements nor did he act in bad faith. That is to say, it would not be wholly illogical . . . for a jury to conclude that the answers, while literally false, were not made by Mr. Null knowing them to be false or in bad faith. This is Plaintiff's version of events, and it may well be the truth. Of course, a jury could discount this evidence as a *post hoc* attempt to salvage the insurance and obtain proceeds from a policy that should have never been issued in the first place. This is Defendants' version of the events, and it may well be the truth.

(*Id.* at 16.)

Plaintiff argues that simply because a jury could conclude that Defendants' decision to deny coverage was reasonable does not mean that Defendants decision was actually reasonable. This logic while superficially appealing is specious. The reason given by Defendants for the denial of coverage is that "facts pertaining to past medical history were misrepresented in the

11

application." (Doc. 19-3 at 90 of 134, August 14, 2006 Ltr. to Pl. from Defs' denying payment of insurance.) On summary judgment, the court has determined as a matter of law that there were material misrepresentations contained in the application. (*See* Doc. 30 at 13, 20.) Defendants did not lack a reasonable basis for denying coverage. To be clear, the denial of benefits under the policy may have been improper and may constitute a breach of contract. Furthermore, Defendants may not be able to demonstrate by clear and convincing evidence that they are entitled to rescission. However, because there was a reasonable basis upon which Defendants rested its denial of the claim, Plaintiff's bad faith claim fails as a matter of law and the court will grant Defendants' motion to strike this claim.

### C. Motion in limine to dismiss claims against Defendant AIG

In Defendants' final motion in limine they ask the court to dismiss Defendant AIG from the case because there is no evidence that AIG participated in the negotiation, issuance or drafting of the policy at issue in this case, and did not participate in or render any claim determination. The parties spend a significant amount of time in their respective briefs discussing the relationship between AIG and American General, which was aptly summarized in the corporate disclosure statement filed by Defendants at the start of this case.

> [American General] is a wholly-owned subsidiary of AGC Life Insurance Company, which is a wholly-owned subsidiary of AIG Life Holdings, which is a wholly-owned subsidiary of [AIG].

(Doc. 6-3.) Plaintiff argues that AIG should remain in the case because it is not clear that American General was acting totally independent of AIG. Specifically, Plaintiff points to the fact that Defendants issued a denial of payment letter on letterhead which contained both the American General and AIG logos, and that

12

Defendants responded to a complaint filed by Plaintiff with the Pennsylvania Department of Insurance with letterhead containing both companies' logos. Moreover, Plaintiff argues that Defendants have held their respective corporations out to the public in general, and specifically to Plaintiff, to be one in the same and that they cannot now credibly argue that they are separate and distinct entities. Plaintiff's claims against AIG appear to be premised on the theory that American General was the agent for AIG.

Other than mere speculation, Plaintiff has produced no evidence suggesting that such an agency relationship existed between the Defendants. Even if it did, "[n]ot only must an arrangement exist between the two corporations so that one acts on behalf of the other and within usual agency principles, but the arrangement must be relevant to the plaintiff's claim of wrongdoing." *Phoenix Can. Oil Co., Ltd. v. Texaco*, 842 F.2d 1466. 1477 (3d Cir. 1988). Here, there no evidence that AIG played any role in the formation of the contract, the underwriting, or the decision to deny Plaintiff's claim. The insurance contract was between Null and American General. Absent some evidence that there existed an agency relationship between the Defendants, and that relationship affected the contract at issue, Plaintiff cannot demonstrate that AIG is liable for the actions of American General. Accordingly, the court concludes that Defendant AIG is entitled to be dismissed from the case.

**III.**     **<u>Conclusion</u>**

The court will issue an order consistent with this opinion.

s/Sylvia H. Rambo<br>United States District Judge

Dated:  December 7, 2009.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LONNY L. NEIMAN, JR., :
:
    Plaintiff : CIVIL NO. 1:CV-08-1535
:
v. :
:
AMERICAN INTERNATIONAL : JUDGE SYLVIA RAMBO
GROUP, INC. and its subsidiary :
AMERICAN GENERAL LIFE AND :
ACCIDENT INSURANCE :
COMPANY, :
:
    Defendants :

# O R D E R

In accordance with the attached memorandum of law, **IT IS HEREBY ORDERED THAT**:

(1) Plaintiff's motion in limine, (Doc. 34), is **GRANTED IN PART AND DENIED IN PART** as follows:

(a) Plaintiff's motion is **GRANTED** as follows, and Defendants are precluded from introducing any evidence on the following subjects: (1) Larry Null's medical records subsequent to July 20, 2005; (2) Larry Null's purported weight loss or the cause of death of his father; and (3) any evidence concerning the customer satisfaction survey.

b) Plaintiff's motion is **DENIED** with respect to his request to preclude Defendants from introducing evidence of the nurse's notation in Larry Null's April 28, 2005 medical records that he had noticed "bloody sputum" the day before the visit. Defendants may introduce these records and evidence on this topic.

(2) Defendants' motion in limine to strike Plaintiffs' jury demand, (Doc. 33), is **DENIED**;

(3) Defendants' motion in limine to strike Plaintiffs' bad faith claim, (Doc. 34) is **GRANTED**. Plaintiff's bad faith claim is stricken and Plaintiff may not assert it at trial.

(4) Defendants' motion in limine to dismiss Defendant American International Group, Inc. and to bar any reference to American International Group, Inc., (Doc. 32), at trial is **GRANTED**, and Plaintiff's claims against American International Group, Inc. are dismissed. Plaintiff shall not mention this Defendant at trial.

s/Sylvia H. Rambo<br>United States District Judge

Dated: December 7, 2009.